UNITED STATES of America,
Plaintiff–Appellee,

v.

Norman Earl WICKIZER,
Defendant–Appellant.

No. 80–5107.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 24, 1980.

Decided Nov. 21, 1980.

Warren B. Little, London, Ky., (Court appointed), for defendant–appellant.

Patrick H. Molloy, U.S. Atty., Robert F. Houlihan, Jr., Asst. U.S. Atty., Marianna Read, Lexington, Ky., for plaintiff–appellee.

Before MARTIN and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Norman Earl Wickizer appeals from a conviction for unlawfully receiving or possessing unregistered firearms in violation of 26 U.S.C. § 5861(d) and 5871.

On October 26, 1979, the sheriff for Madison County, Indiana, wrote the Kentucky State Police to advise them that Ernest Smith and David Taylor had escaped from jail. The letter stated the sheriff's belief that Smith was going to the Harlan County area in Kentucky.

On November 13, 1979, the Kentucky State Police filed a criminal complaint alleging that Smith was a fugitive from justice with the Trial Commissioner in the Harlan County District Court. The Trial Commissioner was given the Indiana Sheriff's letter at this time. An arrest warrant was issued for Smith.

On December 6 or 7, 1979, two state police officers received a tip that Smith was staying at a cabin with another man and woman and that both men were armed. The cabin was owned by Smith's stepbrother. The police were told that Smith said he wouldn't be taken alive. The police believed the man with Smith was Taylor.

On December 7, 1979, five state police officers and two Harlan County Deputy sheriffs went to the cabin to arrest Smith. Although they had the arrest warrant, they had not acquired a search warrant for the premises.

When the police arrived at the cabin they found the door was locked. The police then kicked in the door without knocking or announcing their identity. After kicking in the door an officer shouted "police, take it easy."

There were four people inside the cabin: Smith, Wickizer, and two women. They were asleep on two mattresses.

Smith and Wickizer were taken outside and handcuffed. The officers noticed two guns propped up against the wall near the mattresses. One was a sawed–off .30 calibre carbine; the other was a sawed–off .22 calibre rifle. These rifles were in the plain view of the officers.

Wickizer filed a motion to suppress the firearms alleging an unlawful search and seizure. The motion was denied.

Wickizer appeals from the denial of the motion to suppress.

Wickizer contends that the government had the burden of justifying the search and seizure of the firearms because an arrest warrant was not issued in his name and the police did not have a search warrant. He asserts that the district court improperly allocated the burden of proof.

The burden of establishing a *prima facie* case of an unlawful search and seizure is on the movant, once he makes out a *prima facie* case the burden shifts to the government. *Cf. United States v. Murrie*, 534 F.2d 695 (6th Cir. 1976). Wickizer made a prima facie case, but the district court concluded that the government carried its burden. The evidence presented by Wickizer's witnesses about the facts of the arrest was ample to conclude the arrest was not improper.

Wickizer asserts that the arrest warrant issued for Smith was improper. He contends the district court erred in considering the letter from the Indiana State Police in upholding the warrant.

In determining that there was probable cause to support the arrest warrant the district court considered both the affidavit of the detective who swore Smith was a fugitive from justice and the letter sent by the Indiana State Police. The court concluded: "as the letter was tendered at the same time [as the affidavit], although it, is not specifically incorporated by reference, it is logical to consider it as an addendum to the complaint."

Wickizer contends that Kentucky law requires that a determination of probable cause be confined to the affidavit. He relies on *Robinson v. Commonwealth*, 550 S.W.2d 496 (Ky.1977). *Robinson* is not on point. Although it does state that the determination of probable cause is confined to the affidavit, this language was intended to state that if a warrant is valid on its face, the court will not go behind these allegations to determine if they were based on sufficient evidence.

The district court's consideration of the Indiana Police letter was not error. The evidence supports the conclusion that the letter was given to the Trial Commissioner before the warrant was issued. It was proper to consider information before a magistrate other than that contained in the affidavit, *Cf. Flanagan v. Rose*, 478 F.2d 222 (6th Cir. 1973). In this case, the letter and the affidavit were sufficient to justify the issuance of the arrest warrant.

■ Wickizer's next contention is that even if the arrest warrant was valid, it did not authorize the police to enter the cabin. There is no merit to this argument.

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court stated "For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 100 S.Ct. at 1388. We believe the police were properly authorized to enter the cabin.

■ The seizure of the rifles was also valid under the plain view doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Baldwin*, 621 F.2d 251 (6th Cir. 1980). Although there was a conflict in the testimony about when the rifles were seen, one police officer testified that the rifles were seen when the police first entered the cabin. The district court found this was true. The rifles were leaning against the wall in plain view. Both rifles were sawed off to an illegal length and the court found they were "obviously contraband." This was a fact question and the court concluded the officers saw the rifles when they entered the cabin. In these circumstances, we hold that the seizure of the rifles was proper.

■ The police also had probable cause to arrest Wickizer. The police were entitled to ask Wickizer to go outside the cabin because "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining mere information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Cf. United States v. Blum*, 614 F.2d 537 (6th Cir. 1980). The district court found that "when the officers had Smith and Wickizer get out of the cabin, they had seen firearms propped against the wall near the mattresses." Once the rifles were seized the police had probable cause to arrest Wickizer for possession of the sawed–off rifle nearest him.

We have examined Wickizer's other contentions and we find none of them has merit.

AFFIRMED.